**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____X

A.S. on behalf of T.B.,

                                                Case No: 23-cv-4580

        Plaintiff,

        v.

New York City Department of Education,
New York City Board of Education, and
David C. Banks, in his official capacity as
Chancellor of the New York City School District,

        Defendants.
_____X

## DECLARATION OF IRINA ROLLER, ESQ.

1. I am a 1999 graduate of New York Law School. I was admitted to practice in New York State in January 2000. I was admitted to practice in the Eastern and Southern Districts in November 2000.

2. Prior to starting my firm in 2004, I worked for a boutique litigation practice for a little over 4 years. I successfully tried cases in the Supreme Courts of New York State, represented clients before the New York State Court of Claims, prepared appeals and argued before the Appellate Division. In my first 4 years, I successfully tried Plaintiff's negligence and medical malpractice cases as lead (and sole) trial counsel, obtaining verdicts in my clients' favor that were published in the Jury Verdict Reporter. I selected dozens of juries and successfully settled cases for clients as a litigation associate from 2000-04, and then in 2004-07 at my own firm.

3. I am the principal at the Law Offices of Irina Roller, PLLC. I started the firm in 2004. Since

2007, my practice has been dedicated exclusively to litigating on behalf of parents pursuing special education through the Impartial Hearing process. I have represented parents in the geographic areas covered by the Southern and Eastern Districts of New York.

4. My current hourly rate is $600 per hour for cases, commencing during the 2022-2023 school year.

5. In prior years I charged lower rates. I have incrementally increased my rate to reflect the prevailing rates in NYC. My firm's current rate for legal assistant and paralegal services is currently $125-$300 per hour and $100-$300 per hour for law clerks. My firm's current rate for associate attorneys and of counsel is $275-600. Examples of some current attorney rates charged by my office:

    Jill Hornig            Admitted in 1993 $500.00
    Alexandra Ferguson     Admitted in 1996 $500.00
    Traci Weissman         Admitted in 2011 $450.00

6. My current hourly rates accurately reflects rates within the Southern District of New York for attorneys of similar skill and experience practicing in this area of the law.

7. When I founded my firm, I was a solo practitioner. I have added staff, attorneys and of counsel, as my firm's reputation and caseload has grown. The firm has a very strong record of success at hearings and with favorable settlements. Our strong record at hearings and with settlements continues. We represent clients zealously and obtain successful results.

8. The litigation skills from my trial work – skills that few practitioners obtain so early in their careers – along with the hundreds of special education cases that I have tried successfully have allowed me to be successful in this complex practice area.

9. When I began to practice in special education in 2007, I took cases on contingency. Parents engaged me to represent them for hearings with reliance on the fee shifting provision for the prevailing party.

10. I continued to accept cases on contingency only until the 2016-17 school year, when I began to accept paying clients who paid my up-front retainers based upon then-current rates that my firm was charging, and which were with market rates.

11. The majority of my current clients are "paying" clients, and as such have expressly agreed to and signed my firm's standard form of client engagement letter, to be responsible for payment of attorney fees at the above current rates.

12. I have also represented clients based on contingency agreements. I do not charge them fees unless parent prevails at hearing, in which event, as prevailing party, I seek fees from DOE through the fee-shifting provision of Civil Rights law, a purpose of which is to attract qualified attorneys willing to represent the parents who may not otherwise be able to afford or obtain legal representation to vindicate the educational rights of their disabled children. The contingency cases carry great risk, opportunity costs and often involves outlays of money beyond staff time, i.e. interpreting services and supporting parents in various tasks such as school applications.

13. Clients and the Firm relies on IDEA "prevailing party" status to supplement any gap between the up-front fees and the total litigation fees. This arrangement allows low income as well as middle and working class parents to assert their legal rights, as intended by the fee-shifting provision of the IDEA. Parents, are however, aware that they are ultimately responsible for all legal fees incurred in their cases.

14. I also represent parents on a sliding scale retainer, on full or partial contingency and *pro bono*, depending on the client's particular financial circumstances.

15. Parents daily contact my office seeking *pro bono* or contingency based representation. The vast majority who contact my office for such services are minority and immigrant families.

16. Currently, it can take several years and (as seen in this case) the filing of a separate civil complaint (resulting in more outlay of filing fees along with significant attorney time) to resolve with the New York City Department of Education legal fees under the IDEA's fee shifting provision.

17. But for the fee-shifting provision many NY families would be unable to access legal representation for their children.

18. Compounding the difficulties faced by NYC families with children with special needs is the fact that once claims are successfully tried to a prevailing hearing decision, attorneys representing Parents must wait years to receive a reply, initial offer or resolution to their fee requests from the New York City Department of Education's Office of General Counsel. There is financial strain on families and firms practicing in this area is further compounded by delays in implementing the hearing awards.

19. For families of limited means and even for those families that would be considered middle class, legal fees along with the fronting of private school tuition (on the average ranging from $60,000 to over $100,000, and some schools that cost in the range of $200,000), private evaluation costs (on the average ranging from $5,000 to $10,000) and other services, are but a few examples of the expenses parents face when they have children with special needs. When obtaining appropriate services in instances when the DOE has failed

to offer a FAPE (free appropriate public education) these expenses coupled with legal fees becomes unaffordable and unattainable.

20. The attorneys and firms that devote their practice to represent those families, of which there is a short list, rely on the fee-shifting provision of the IDEA.

21. Most special educations attorneys and firms in NYC practice exclusively or almost exclusively in the area of special education. It requires skill and experience with the nuanced and specialized process to be successful.

22. Special education is a specialized field of law practice. Lawyers who do not regularly practice in the field confront a significant learning curve if they take on a special education matter. Generally, such lawyers do not attempt special education matters.

23. My credentials, experience, skill, and expertise support the rates I charge for providing legal representation to children and their families.

24. In special education law, like other highly specialized area of practice, it takes a skilled and experienced practitioner to understand how to synthesize the law (i.e., educational program issues and disability issues) and apply them to the unique facts of every case (because it's a child, not just a case, we're talking about). This is not only time consuming, but it takes a great deal of experience in special education law to understand how things can play out for a child – i.e, depending on what form of relief their attorney seeks.

25. In addition to having expertise in IDEA, NY State Regulations, the DOE's Standard Operating Procedures Manual ("SOPM"), special education attorneys know the landscape of the various schools and institutions that are available to students, specialist services providers. We must understand the nuances and dynamics of the DOE's Committees on Special Education (CSE), transportation that is of significant effect when it comes to a child's education as no school can help a child if he/she cannot get there, and the various

geographic obstacles that stand in the way of education when an appropriate school may not be available with a feasible distance.

26. At the administrative level, a Parent's attorney may spend 60 hours preparing for a hearing that runs like a litigation trial, in which the NYC DOE has the burden of proof and persuasion in two of the three issues (Prongs) which are to be determined. Then, if on the first day of the trial, the DOE concedes that it did not offer the student an appropriate education and will not be putting on any witnesses the length of trial will be shortened. However, the bell cannot be un-rung: the preparation time spent in anticipation of the DOE putting on witnesses remains.

27. Yet, in negotiating attorney fee awards, NYC DOE applies a ratio of number of hours of preparation time to hours of trial time as a one size fits all. The nature of these proceedings and of the DOE's—both in-trial and out-of-trial—tactics simply do not make such predetermined ratios generous from case-to-case.

28. Often, a hearing officer will express a preference that the Parents and their witnesses provide direct testimony via affidavit and then be available to be cross-examined by the DOE attorney.[1] This is another instance resulting in an increase in preparation time and a decrease in trial time. Yet, again, in attempting to negotiate parent's attorney fee award -- to which they are entitled as prevailing party -- the DOE insists on applying an unfair ratio between preparation time and trial time. This formula simply does not work in these cases.

---

[1] As some hearing officers have the exact opposite preference and require live testimony, having the same client receive a different hearing officer for a subsequent school year can even cause an *increase* in preparation time between two school years, despite an attorney's increase in familiarity with the facts and witnesses.

29. The work of a special education attorney is particularly rewarding. In prevailing, the special education attorney positively and directly impacts the trajectory of a young person's life by obtaining for the child the education he or she requires to progress, thereby providing the student the opportunity to succeed in school. Often, for the first time, the student begins to experience success: a dyslexic child finally provided proper reading instruction begins to read and believe in themselves – to no longer seeing themselves as "stupid", to grow in self-esteem, to have the hope of becoming a contributing member of our society, rather than seeing themselves as failures and perhaps becoming a burden on society.

30. Practicing special education law -- doing good by improving the lives and future outcomes of children is a most fulfilling area of practice.  It is also time-intensive, complex, and important. There is a dearth of attorneys willing to undertake the degree of complexity and commitment required. With such under-representation, there can be no doubt that many disabled students spend their school-life lost in the system, denied – whether intentionally or unintentionally -- the programs and services that federal law mandates and, in so many cases, directly determine whether the course of a child's life will lead to functional independence or a life-long burden on society.

31. I am personally familiar with the special education bar in the Southern District of New York, as well as the general legal community here. Compared to other areas of law, the special education bar is very small, and it is very difficult to attract new attorneys to this area with rates that are not commensurate with other areas of civil rights litigation.

32. While this Court only uses rates of this district under the "forum rule", I would ask the Court to take notice of rates that are awarded in neighboring jurisdictions that most closely resemble NYC. In the District of New Jersey, for instance, even civil rights attorneys whose

rates are cut in more than half by the Court are still awarded—as a Lodestar rate--$750.00 for more than 25 years experience, $690.00 for 21-25 years experience, $580.00 for 16-20 years experience, $500.00 for 11-15 years experience, $410.00 for 6-10 years experience, and $325.00 for 2-5 years experience. Their paralegals even have an hourly rate range of $250.00 - $280.00.[2]

33. Unlike in areas of law and litigation where the facts of a case are already developed and an experienced litigator has a sense of how long a case may take, in special education cases the facts of a special education case are typically continuing to develop not only through the time that the litigation is filed but sometimes after as well – special education cases are living, breathing and evolving case because they are about a child. This can mean changing case strategy and the course of a case, even after filing for due process. Attorneys in these cases must be awarded the time they spend on the case – the complexity of the case should not be all that is considered. It is not always possible to predict the complexity of a case, especially when the school district's position on defending a case varies so greatly from case to case and cannot be predicted ahead of time. Often the fact that a case takes less time at the trial stage, or the school district decides not to defend is a direct result of the work done by the parent's counsel in preparing a strong case.

34. The bills on cases, even some cases that look similar can be different based on a variety of other factors. For example, scheduling of the trial by the hearing officer (IHO) can be different: some IHOs schedules cases with many hours on one trial day or consecutive

---

[2] *Ams. for Prosperity v. Grewal*, 2021 WL 1153194, 2021 U.S. Dist. LEXIS 57979 (D.N.J. Mar. 26, 2021) (fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988).

days, but often times due to congested schedules, limited time of the IHOs and DOE litigators, limited number of IHOs, a case may take several days to complete and those days are often scheduled several weeks or months apart. Parent's counsel must start anew in their prep to refresh their own recollection of the case, and this adds hours to the preparation time to the case. In other instances, the DOE's counsel delays cases by lack of preparedness, seeking continuances to "investigate" the case for settlement or determine witnesses, or to determine if they are presenting a Prong I case, and often not letting Parent's counsel know until the last minute whether they intend to defend their case with evidence or witnesses. Yet other times, the DOE's counsel states that they will defend their case and then they come into the trial and state they do not – after Parent's counsel has already prepared to defend on all three prongs. Although some IHOs have asked Parent's counsel to present their witnesses by affidavit, the DOE will inform Parent's counsel that they will cross examine every witness that is presented by Affidavit. As a result, Parent's counsel prepares their witnesses for cross-examination just to find out the day of trial that the DOE's counsel will not cross examine them. I give these examples from personal experience on my own cases.

35. The lack of preparedness of an opposing counsel can ever be assumed or viewed in the rear-view mirror and does not obviate the need for Parent's counsel to be prepared at trial. Parent's counsel's success should not be viewed retrospectively.

36. The DOE sometimes takes the position "that they are not presenting a case" but also not conceding Prong I. They present documents without witnesses and "rest on the documents". In one recent case I had an IHO find that FAPE was offered on a disputed IEP and school placement, even though the DOE presented no witnesses in support of its

IEP or school placement. So, when the DOE suggests that a Parent wins at the trial by default when the DOE presented no witnesses, its simply not true. Further, even when the DOE does concede Prong I, it typically will not concede Prong II or III and how hard they fight is unpredictable – that means Parent's counsel must prepare a rock-solid case on Prong II and III even when the DOE concedes Prong I. I have had many a case where the DOE attacks parent's unilateral placement and makes equities arguments, in order to demonstrate that parents are not entitled to the relief they seek if there was a denial of FAPE.

37. We cannot anticipate what the DOE will do, and must prepare each case for litigation at every stage. To do otherwise would be professional malpractice.

38. Firms that rely on the IDEA's fee shifting provisions (like my own) risk working for hundreds of hours without compensation. Advocates for Children's willingness to accept this risk at both the state and federal level – dedicating its attorneys and resources for years without guaranteed compensation – attests to its commitment to the disabled community.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 6th day of December, 2023.

*s/ Irina Roller*
Irina Roller, Esq.
Law Offices of Irina Roller, Esq.
