UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                                    :
A.S. on behalf of T.B.,                                             :
                                                                    :
                                    Plaintiff,                      :
                                                                    :
                    -v-                                             :          23 Civ. 4580 (JPC)
                                                                    :
NEW YORK CITY DEPARTMENT OF EDUCATION,                              :          OPINION AND ORDER
*et al.*,                                                           :
                                                                    :
                                    Defendants.                     :
                                                                    :
---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       This action arises under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"), a statute whose purpose is "to ensure that all children with disabilities have available to them a free appropriate public education," *id.* § 1400(d)(1)(A). Plaintiff A.S. prevailed in administrative proceedings against the New York City Department of Education (the "DOE") concerning the denial of a free appropriate public education ("FAPE") to her son, T.B. Plaintiff now seeks reimbursement of $96,090 in attorneys' fees and costs incurred during that process and this resulting litigation under the IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3). For the following reasons, the Court grants Plaintiff's motion for summary judgment in part and awards her $54,669 in attorneys' fees.

## I. Background

**A.    Facts**[1]

The DOE currently classifies T.B. as a student with an Intellectual Disability.  Pl. 56.1 Stmt. ¶ 1.  In October 2018, Plaintiff submitted a request for a due process hearing before an impartial hearing officer ("IHO") to the DOE.  *Id.* ¶ 2.  Plaintiff was represented by attorneys from Advocates for Children of New York ("AFC") in making her due process hearing request.  *Id.* ¶ 3.

In the request, Plaintiff asserted that the DOE denied T.B. a FAPE for every school year from 2011-2012 through 2018-2019.  *Id.* ¶ 4.  The due process hearing request alleged that T.B. had across the board deficits in reading, writing, math, speech-language, fine motor abilities, social-emotional functioning, executive functioning, and attention, and that the DOE had failed to evaluate T.B., identify his needs, develop appropriate individualized education programs ("IEPs"), or implement those IEPs.  *Id.* ¶¶ 5-6.  Moreover, Plaintiff alleged that the DOE had not identified T.B. as a student with an Intellectual Disability until 2018, despite T.B. having an IEP since 2012 and having struggled for years.  *Id.* ¶ 7.  According to the due process hearing request, the DOE had denied T.B. a FAPE and thus was required to place the child "at the Cooke Center Academy, an appropriate private school that was able to meet T.B.'s needs."  *Id.* ¶ 8.  Plaintiff requested an order requiring the DOE to place T.B. in the Cooke Center Academy, pay for T.B.'s attendance there, provide busing to and from the academy, reimburse Plaintiff for the cost of T.B.'s school breakfast and lunch, pay for a Functional Behavior Assessment, convene an IEP meeting, and pay for appropriate compensatory services.  *Id.* ¶ 9.

---

[1] The following facts are taken from Plaintiff's statement of undisputed facts pursuant to Local Civil Rule 56.1, Dkt. 42 ("Pl. 56.1 Stmt."), which Defendants have not disputed, *see* Dkt. 49 ("Opposition") at 3 ("Defendants accept Plaintiff[']s Statement of Undisputed Material Facts.").

The IHO conducted several hearings between January 2019 and June 2020. *Id.* ¶ 10. In January 2019, the IHO held a status conference; this was followed by a hearing on May 22, 2019, at which the IHO ruled that there was a denial of a FAPE for both the 2016-2017 and 2017-2018 school years. *Id.* ¶¶ 11-12. On May 24, 2019, the IHO conducted another hearing, at which Plaintiff submitted thirty-five exhibits and presented testimony from two witnesses. *Id.* ¶ 13. Those witnesses were subjected to direct examination, cross-examination, and re-examination. *Id.* The hearing was adjourned so the parties could undertake settlement negotiations in light of the issues and evidence presented at the hearing. *Id.*

In April 2020, the IHO conducted a hearing on the remedy to be awarded, as the parties disagreed on the length of time T.B. could utilize compensatory services. *Id.* ¶ 15. On June 3, 2020, after the parties were unable to reach a settlement, the IHO conducted another hearing to decide the claims and relief. *Id.* ¶ 17. Plaintiff submitted a written closing brief for this hearing; the DOE made oral and written closing submissions but did not present a case. *Id.* On June 7, 2020, the IHO found that placement at the Cooke Center Academy was appropriate and ordered the DOE to create a bank of 1,500 hours of compensatory services that could be utilized through August 2025. *Id.* ¶ 18. The IHO also ordered that once 1,000 of these hours were utilized or after January 1, 2025, whichever comes first, the DOE was to bear the cost of comprehensive reevaluation of T.B. and to consider the impact on his IEP. *Id.* The DOE did not appeal this order. *Id.* ¶ 19.

## B.    Procedural History

Plaintiff submitted a request for attorneys' fees to the DOE on January 5, 2022. Dkt. 1 ("Compl.") ¶ 21; Dkt. 27 ("Ans.") ¶ 21. On May 31, 2023, Plaintiff filed her Complaint in this Court, seeking reimbursement for attorneys' fees and costs incurred in the administrative

proceedings and this action. *See* Compl. In this action, Plaintiff is represented by lawyers from LTL Attorneys LLP ("LTL"). *See* Compl. at 7. The Court held a conference with the parties on September 18, 2023, and Defendants filed their Answer on September 19, 2023. Dkt. 27. On December 15, 2023, Plaintiff moved for summary judgment, Dkts. 35, 36 ("Motion"), attaching various attorney declarations and exhibits in support, *see* Dkts. 37-46.[2] Defendants filed their opposition on January 24, 2024, Dkt. 49, attaching four attorney declarations, *see* Dkts. 50-53. On February 16, 2024, Plaintiff filed supplemental declarations in support of her motion, *see* Dkts. 57-60, and Plaintiff filed her reply on February 20, 2024, Dkt. 61 ("Reply"). The Court granted Defendants leave to file a sur-reply, Dkt. 66, and their sur-reply was filed on April 19, 2024, Dkt. 69 ("Sur-Reply").

---

[2] Plaintiff has moved to seal Exhibits A, I, and J of the Declaration from her attorney, Rebecca Shore, Dkt. 46 ("Shore Decl."); *see* Dkts. 45, 45-1, 45-2, 45-3, and Exhibits L, M, N, O, and P of Ms. Shore's Supplemental Declaration, Dkt. 58 ("Shore Suppl. Decl."); *see* Dkts. 60, 60-1, 60-2, 60-3, 60-4, 60-5. *See* Dkts. 43, 59. Defendants have not opposed those motions. Having considered these exhibits, along with the accompanying declarations, in light of *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), the Court grants the sealing motions in part and denies them in part. The Court agrees that Exhibits I and J of the Shore Declaration, Dkts. 45-2, 45-3, and Exhibits L, M, and N of the Shore Supplemental Declaration, Dkts. 60-1, 60-2, 60-3, should be sealed in full as they entirely consist of sensitive personal information for T.B., a minor, including his medical information. But the Court will not order Exhibit A of the Shore Declaration, Dkt. 45-1, Exhibits O and P of the Shore Supplemental Declaration, Dkts. 60-4, 60-5, or the two accompanying declarations (without their attachments), Dkts. 45, 60, sealed in their entirety. First, these exhibits are attorney billing records containing information that is relevant to the Court's disposition of the pending summary judgment motion. Second, while these records do mention T.B.'s sensitive personal information, non-sensitive information also is contained in the records. Rather than sealing these exhibits in full, it is appropriate for them to be publicly filed, with T.B.'s sensitive information redacted. In addition, the texts contained in the accompanying declaration do not themselves reveal sensitive information for T.B. Accordingly, Plaintiff is directed, within seven days of this Opinion and Order, to provide the Court with versions of these exhibits and the accompanying declarations with any appropriate proposed redactions pursuant to the legal standards in *Lugosch* and its progeny and the procedures outlined in this Court's Individual Civil Rule 4.

## II.  The DOE Declarations

Before turning to the merits of Plaintiff's summary judgment motion, the Court addresses an issue regarding certain declarations filed by Defendants in support of their opposition to summary judgment.  *Cf. FTC v. Vantage Point Servs., LLC*, 266 F. Supp. 3d 648, 654 (W.D.N.Y. 2017) ("Because a decision on [a] motion to strike may affect [the movant's] ability to prevail on summary judgment, it is appropriate to consider a motion to strike prior to a motion for summary judgment." (quoting *Pugliese v. Verizon N.Y., Inc.*, No. 05 Civ. 4005 (KMK), 2008 WL 2882092 (S.D.N.Y. July 10, 2008))).  In opposing summary judgment, Defendants submitted declarations from Lauren Howland, Dkt. 50 ("Howland Decl."), Susan J. Weiswasser, Dkt. 51 ("Weiswasser Decl."), Armelle Hillman, Dkt. 52 ("Hillman Decl."), and Emily Goldman, Dkt. 53 ("Goldman Decl.").  In her reply brief, Plaintiff objected to these declarations as improper.  *See* Reply at 4-5. On September 9, 2024, the Court ordered Defendants to show cause why the Howland Declaration, the Weiswasser Declaration, and three paragraphs of the Hillman Declaration should not be stricken from the record for advancing improper legal arguments in violation of the requirements of Federal Rule of Civil Procedure 56(c)(4). Dkt. 70.  Defendants filed their response to the order to show cause on September 12, 2024.  Dkt. 71 ("OSC Response").

Rule 56(c)(4) requires that declarations used to oppose a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4). The Weiswasser Declaration and portions of the Howland and Hillman Declarations all violate Rule 56(c)(4).  To cite just a few examples, the Howland Declaration begins with Ms. Howland's conclusion that Plaintiff's billing records contain "vague, excessive, or otherwise unreasonable billing" which "support an 80% reduction to the time needlessly spent on the federal fees action."

Howland Decl. ¶ 4.  The declaration goes on to observe that "[c]ourts in this district have generally permitted 0.7 hours total to draft a complaint in a simple, fees-only action, such as the action at bar," *id.* ¶ 15 (citing cases), stating "[t]hus, Plaintiff's time to prepare the complaint should be reduced to 0.7 hours.  Moreover, if a senior level attorney (here, R. Shore) required over an hour to prepare a brief, regurgitated complaint, that would weigh heavily in favor of a steep reduction of that practitioner's hourly rate."  *Id.*  After analyzing various excerpts of Plaintiff's bills, the Howland Declaration states that these "examples are a limited survey of the grossly excessive billing practice on display in this matter, which support an 80% reduction of the time needlessly spent on the federal fees action."  *Id.* ¶ 21.

The Weiswasser Declaration similarly declares that "a 30% global reduction to the administrative billing is warranted."  Weiswasser Decl. ¶ 5.  Ms. Weiswasser stated that "Courts regularly reduce hours billed too far in advance of the [due process complaint]," *id.* ¶ 7, argued that certain time entries are "not appropriately billed toward the administrative proceeding," *id.* ¶ 10, and opined that some of the time billed is "wholly unnecessary," *id.* ¶ 17 (citing cases).  The Weiswasser Declaration repeatedly asserted such legal conclusions, often accompanied by citations to cases.  *See, e.g.*, *id.* ¶¶ 16, 24-25, 30, 33.  While the issues in the Hillman Declaration are not as extensive, Ms. Hillman still opined that "[b]ased on my review of case law and my experience reviewing and negotiating fee claims for the DOE, the rates sought by counsel are excessive and do not comport with controlling law," and proceeded to analyze Plaintiff's billing records in light of prior cases.  Hillman Decl. ¶¶ 17-18, 20.

This legal analysis in these three declarations is cross-referenced into Defendants' Opposition, the effect of which is to expand and deepen the Opposition's argument on the critical issue of the reasonableness of the requested fees.  If it was not evident that Defendants are utilizing

declarations submitted under Rule 56(c)(4) as additional briefing space, consider Defendants' sur-reply. The Court granted Defendants leave to file a sur-reply to respond to Plaintiff's time billed in conjunction with her reply brief. Dkt. 66. The sur-reply filed was another declaration from Ms. Howland, which further analyzed the records in light of case law. *See* Dkt. 69. Defendants have not merely blurred the line between legal argument submitted through briefing and facts submitted through a declaration, but have erased it entirely.

"[W]hen an affidavit does not comply with the requirements of Rule 56, the offending portions should be disregarded by the court," but "striking a declaration from the record is at the court's discretion." *Vantage Point Servs.*, 266 F. Supp. 3d at 654; *see also Schneidermesser v. NYU Grossman Sch. of Med.*, No. 21 Civ. 7179 (DEH), 2024 WL 4054372, at *1-2 (S.D.N.Y. Sept. 5, 2024). Thus, while a court must disregard the portions of the submitted declarations that offer improper legal argument and conclusions, whether the violations are serious enough to warrant striking the offending declarations is a matter left to the court's discretion. When portions of a declaration "consist entirely of legal argument and legal conclusions, the Court may properly strike those portions from the record." *Leroy v. Livingston Manor Cent. Sch. Dist.*, No. 21 Civ. 6008 (NSR), 2024 WL 1484254, at *6 (S.D.N.Y. Apr. 5, 2024); *see Vantage Point Servs.*, 266 F. Supp. 3d at 654 ("[A] court may strike those portions of a declaration that are not made upon the declarant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements.").

Defendants insist that they have "submitted similar declarations in dozens of oppositions to Plaintiff IDEA fees motions filed annually,"[3] and that "[c]ourts in this district have long relied

---

[3]    The Court finds Defendants' comparison to *M.B. v. New York City Department of Education*, No. 22 Civ. 6405 (JPC) (SN), 2024 WL 1343596 (S.D.N.Y. Mar. 30, 2024),

on attorney declarations such as those submitted here in determining the reasonableness of hourly rates and hours billed." OSC Response at 1-2. If anything, this counsels the Court towards striking the offending declarations as it suggests the need to deter Defendants' apparent routine violation of Rule 56(c)(4). This Court also is not the first to note a situation where Defendants' submissions of attorney declarations in IDEA fees cases contained excessive legal argument. *See L.J. v. New York City Dep't of Educ.*, No. 23 Civ. 7267 (ER), 2024 WL 3842083, at *2 n.2 (S.D.N.Y. Aug. 16, 2024) (observing that the DOE defendants "includ[ed] excessive legal argument in their attorney declarations"). At least one other judge in this District has faulted a plaintiff's counsel in an IDEA case for this issue, *see D.P. v. New York City Dep't of Educ.*, No. 21 Civ. 27 (KPF), 2022 WL 103536, at *1 n.1 (S.D.N.Y. Jan. 10, 2022) (pausing to "observe that Plaintiff offers extensive legal and factual arguments (and not merely exhibits) in the declarations of her attorneys" from the Cuddy Law Firm), and the Court notes that the DOE has lodged the same objection to secure a reduced fee award in a past IDEA case, *see A.R. v. New York City Dep't of Educ.*, No. 12 Civ. 7144 (RWS), 2014 WL 5462465, at *10 (S.D.N.Y. Oct. 28, 2014) (reducing fees after the DOE argued that the plaintiff's counsel's "reply declaration was improper due to inclusion of legal arguments and assertions not based on his personal knowledge," as "[t]he purpose of a declaration is to set forth information known personally by the attorneys submitting them, not to make legal arguments properly left to motion papers").

Defendants next argue that these declarations are submitted because Defendants' counsel are "uniquely positioned to testify as to the reasonableness of Plaintiff's hourly rates and billed

---

unpersuasive. As Defendants are aware, that case involved specific objections lodged by Plaintiff's counsel to a magistrate judge's Report and Recommendation. Whether Defendants submitted improper declarations was not one of the objections raised in that case, nor did the plaintiff there raise this issue in the underlying briefing. *See M.B.*, No. 22 Civ. 6405, Dkt. 59.

hours." OSC Response at 2. Defendants contend that the declarations are intended to "highlight for the Court examples of unreasonable billing," with "the attendant citations to caselaw . . . intended only to be illustrative of similar IDEA fees motions" and are "provided to invoke the institutional knowledge that this office has accumulated over years of attorney's fees cases." *Id.* The Court does not doubt that Defendants' attorneys have considerable experience litigating these matters and the Court is not troubled by the Goldman Declaration, which provided such statistical context for the Court's consideration. *See* Goldman Decl. But there is a difference between the facts contained in the Goldman Declaration, which properly align with the requirements of Rule 56(c)(4), and the improper legal argument and conclusions contained in the three offending declarations.[4] As Defendants stated in their response, these declarations contain "each attorney's analysis of the reasonableness of the billing." OSC Response at 2. That analysis should be presented to the Court through briefing, not via a smattering of attorney declarations. *See Leroy*, 2024 WL 1484254, at *6.

After considering the degree of the violation here, the need for deterrence, and Defendants' justifications presented in response to the order to show cause, the Court determines that striking the offending declarations is the appropriate remedy. Thus, the Court strikes Paragraphs 4 through 21 of the Howland Declaration, the entirety of the Weiswasser Declaration, and Paragraphs 17, 18, and 20 of the Hillman Declaration.

---

[4] Defendants also attempt to justify their legal analysis as facts that would be admissible in evidence. OSC Response at 2. Putting aside whether such testimony must first pass the strictures for expert qualification under Federal Rule of Evidence 702, to accept this position would essentially render any page limitation the Court imposes on briefing meaningless, as the parties' attorneys could simply incorporate further legal argument via an attached declaration as a workaround.

### III.  Motion for Summary Judgment

Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability," based on "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(B)-(C).  There is no dispute that Plaintiff is a prevailing party and is entitled to a fee award.  *See* Motion at 13-14; Opposition at 3 ("Plaintiff is a prevailing party in the administrative proceeding below and thus entitled to reasonable fees and costs.").  The question on summary judgment concerns the reasonableness of Plaintiff's requested fees.

"To calculate reasonable attorneys' fees under the IDEA, courts apply the lodestar method."  *H.C. v. New York City Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023) (internal quotation marks omitted).  Under this method, a court calculates a "presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours."  *Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011) (citation omitted).  In determining reasonable fees awards, "trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### A.    Reasonableness of Requested Rates

To calculate a "presumptively reasonable fee," a district court determines the appropriate billable hours expended and sets a "reasonable hourly rate."  *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)); *accord R.G. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *2 (S.D.N.Y. Sept. 26, 2019).

"[T]he reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d Cir. 2021) (quoting *Lilly*, 934 F.3d at 231). When determining a reasonable hourly rate for an attorney or paralegal, courts consider both the prevailing market rates for such legal services, as well as the case-specific factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190. The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 428 (S.D.N.Y. 2012) (citation omitted). A court need not make specific findings as to each factor, so long as it considers all of them when setting the fee award. *See, e.g.*, *R.G.*, 2019 WL 4735050, at *2.

Here, the relevant community for assessing market rates is the Southern District of New York. *See* Motion at 15; Opposition at 6-16 (comparing the rates in this case to other IDEA cases in this District).[5] Although T.B.'s administrative proceedings were fairly straightforward, the DOE is wrong to characterize those proceedings as "uncontested." Opposition at 7. At the May 2019 hearing, Plaintiff submitted thirty-five exhibits and offered the testimony of two witnesses,

---

[5] Plaintiff submitted four declarations from special education law practitioners in the New York area who generally serve to identify prevailing market rates and the issues which arise in special education administrative proceedings and litigation. *See* Dkts. 38-41. The Court need not rely on these declarations, as it largely considers Plaintiff's rates reasonable given the Court's own knowledge of prevailing market rates for IDEA litigation in this District.

who were subjected to direct examination, cross-examination, and re-examination. Pl. 56.1 Stmt. ¶ 13. Then at the June 3, 2020 hearing, Plaintiff submitted a written closing brief and the DOE made oral and written closing statements. *Id.* ¶ 17. While the Court agrees with Defendants that the complexity of the proceedings does not warrant a higher rate, Opposition at 7, Plaintiff does not appear to be requesting a higher rate on that basis. The Court also is mindful that Plaintiff received, via both settlement and the IHO's decision, substantial relief thanks to the labor of the AFC attorneys, "which is the most critical factor in setting the hourly rate." *S.W. on behalf of A.W. v. New York City Dep't of Educ.*, No. 22 Civ. 3592 (LGS), 2023 WL 5803415, at *5 (S.D.N.Y. Sept. 7, 2023) (internal quotation marks omitted).

"In recent years, the prevailing market rate for experienced, special-education attorneys in the New York area . . . has been between $350 and $475 per hour." *J.G. v. New York City Dep't of Educ.*, No. 23 Civ. 959 (PAE), 2024 WL 728626, at *5 (S.D.N.Y. Feb. 22, 2024); *accord T.P. v. New York City Dep't of Educ.*, No. 22 Civ. 9413 (PAE), 2024 WL 986587, at *6 (S.D.N.Y. Mar. 7, 2024) (same). "For associates with three or fewer years of experience in such litigation, courts in this District have typically approved rates of $150–$275." *J.G.*, 2024 WL 728626, at *5 (internal quotation marks omitted). "Paralegals, depending on skills and experience, have generally garnered between $100 and $125 per hour in IDEA cases in this District." *Id.* (internal quotation marks omitted).

After considering the *Johnson* factors and the specifics of this case, the Court finds that Plaintiff's requested hourly rates are mostly reasonable, with some minor adjustments. Beginning with the AFC attorneys, Plaintiff seeks $420 per hour for Rebecca Shore. Motion at 7-8. Ms. Shore has served as the Director of Litigation at AFC since 2008 and has deep experience in special education law. Shore Decl. ¶¶ 8-9. Several judges in this District have recently awarded Ms.

Shore a $420 hourly rate.  *See L.J.*, 2024 WL 3842083, at \*4 (awarding Ms. Shore this rate and collecting other cases which have done so).  This Court agrees and finds a $420 hourly rate to be reasonable for Ms. Shore.

Next, Plaintiff seeks a $375 per hour rate for Daniel Hochbaum.  Motion at 8-9.  Mr. Hochbaum served as a Senior Staff Attorney at AFC from 2015 to 2021 and previously worked at a public interest organization focused on special education.  Shore Decl. ¶ 7.  As mentioned, recent cases in this District have cited a prevailing market rate for experienced special education attorneys as between $350 and $475 per hour.  *See L.J.*, 2024 WL 3842083, at \*4; *see also S.F. v. New York City Dep't of Educ.*, No. 21 Civ. 11147 (PAE), 2023 WL 4531187, at \*6 (S.D.N.Y. July 13, 2023).  Another AFC attorney who joined the organization around the same time as Mr. Hochbaum recently was awarded a $375 hourly rate, but that attorney also occupied a directorial role for several years.  *See L.J.*, 2024 WL 3842083, at \*4.  Other cases have found "[r]ates between $290 and $325 for mid-level to senior associates and their staff attorney counterparts in nonprofit legal organizations [to be] in line with recent awards in similarly lightly contested cases, particularly when adjusted for inflation."  *S.W.*, 2023 WL 5803415, at \*7 (collecting cases).  Given Mr. Hochbaum's role as a Senior Staff Attorney, his other related experience in the field, and the relief secured for T.B. in this case, the Court finds that a $350 hourly rate is appropriate for him.

Plaintiff seeks a $240 hourly rate for Gena Miller and a $150 hourly rate for Juliet Eisenstein, who served as staff attorneys at AFC.  Motion at 9.  Both were relatively junior attorneys at AFC during these proceedings, with Ms. Miller having graduated from law school in 2016 and Ms. Eisenstein in 2019.  *See* Shore Decl. ¶ 10, Exhs. D, E.  The Court finds that the rates proposed by Plaintiff for Ms. Miller and Ms. Eisenstein, which are commensurately lower than the rates for the two aforementioned more experienced attorneys, are reasonable.  Plaintiff also seeks

a $290 hourly rate for Brianna Kitchelt.  Motion at 9.  Ms. Kitchelt graduated from law school in 2017 and subsequently served as a staff attorney at a disability rights group in Maryland before joining AFC as a staff attorney in 2021.  Shore Decl., Exh. F.  In light of Ms. Kitchelt's relatively junior experience level during the time when she worked on this matter, the Court determines that a rate similar to Ms. Miller's is appropriate and finds a $240 hourly rate for Ms. Kitchelt to be reasonable.

Turning to the LTL attorneys who worked on the federal action, Plaintiff seeks an hourly rate of $420 for Kate Cassidy.  Ms. Cassidy has been a member of the bar since 2008 and spent much of her career at large law firms.  Dkt. 37 ("Cassidy Decl.") ¶ 6.  Ms. Cassidy's standard hourly rate is $1,075, although she typically charges a discounted rate for *pro bono* work.  *Id.*  Ms. Cassidy served as the supervising partner for this case.  *Id.*  The briefing in this case, while boilerplate at times, is generally reflective of the level of skill that the Court would expect from a practitioner with Ms. Cassidy's experience in a relatively straightforward fees action.  Although Ms. Cassidy does not appear to possess any specialized knowledge in the area of special education law, Ms. Cassidy has worked with AFC on such actions for several years.  *Id.*  Moreover, Ms. Cassidy's "general litigation experience was valuable to [her] client." *S.W.*, 2023 WL 5803415, at *7.  Considering these factors, the Court determines that a $420 hourly rate for Ms. Cassidy is reasonable.

Plaintiff also seeks a $150 hourly rate for Tala Sebastian, an LTL law clerk.  Cassidy Decl. ¶ 7.  Although Ms. Sebastian has a legal education, Cassidy Decl. ¶ 7, multiple entries in LTL's billing records reported that Ms. Sebastian performed tasks like collating documents, citation checking, formatting, and proofreading, for which a reasonable client would not expect to pay a lawyer's hourly rate.  With that in mind, Ms. Sebastian undertook most of the work on the summary

judgment motion.  The Court finds a $150 hourly rate for Ms. Sebastian reasonable, as it is "consistent with the hourly rate awarded by other courts in this district to law clerks or attorneys not yet admitted to the bar."  *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 659 (S.D.N.Y. 2019); *see also S.F.*, 2023 WL 4531187, at *9 (applying this rate).  However, the Court will also adjust Ms. Sebastian's hours billed as discussed at *infra* II.B.2, considering the tasks that Ms. Sebastian undertook and the relatively high number of hours she billed.

**B.      Reasonableness of Hours**[6]

"In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).  Whether a case was "particularly complicated" or involved any "significant" legal issues may be considered in determining the reasonable number of hours a case requires.  *See, e.g.*, *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011).  Ultimately, courts have "ample discretion" in assessing the "amount of work that was necessary to achieve the results in a particular case."  *K.L. v. Warwick Valley Cent.*

---

[6] In calculating the number of hours worked in this case, the Court relies upon four billing records provided by AFC and LTL.  *See* Shore Decl., Exh. A; Cassidy Decl., Exh. A; Shore Suppl. Decl., Exh. O; Dkt. 57 ("Cassidy Suppl. Decl."), Exh. D; *see also* Motion at 11 (pointing the Court to Exhibit A of the Shore Declaration and Exhibit A of the Cassidy Declaration for the "complete time records and billing narratives" up through that point in the litigation); Reply at 10 (pointing the Court to the Shore Supplemental Declaration and the Cassidy Supplemental Declaration, which in turn refer to Exhibit O of the Shore Supplemental Declaration and Exhibit D of the Cassidy Supplemental Declaration for additional timesheets reflecting the hours incurred in this matter through the Reply).  Plaintiff submitted a fifth billing record, Shore Suppl. Decl., Exh. P, but Ms. Shore's Supplemental Declaration states that those fees "were not included in our fees request . . . and Plaintiff is not seeking them now."  Shore Suppl. Decl. ¶ 8.  The Court also notes that the billing records contain entries for Chantal Hinds, Danielle Cedillo, Monica Sass, Samantha Gould, Kevin Coleman, and Shaneika Hanson, but Plaintiff does not seek reimbursement for their time. *See* Shore Decl. ¶¶ 12-13; Shore Suppl. Decl. ¶ 8; Cassidy Decl. ¶ 10.

*Sch. Dist.*, No. 12 Civ. 6313 (DLC), 2013 WL 4766339, at *10 (S.D.N.Y. Sept. 5, 2013) (quoting *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992)), *aff'd*, 584 F. App'x 17 (2d Cir. 2014).

A district court also "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *H.C.*, 71 F.4th at 126. "In determining what number of hours is reasonable, the court must exclude hours that are excessive, redundant, or otherwise unnecessary, allowing only those hours that are reasonably expended." *E.L. v. New York City Dep't of Educ.*, No. 23 Civ. 2560 (AS), 2024 WL 3887154, at *2 (S.D.N.Y. Aug. 21, 2024). After considering the arguments made by the parties and reviewing the hours billed in this case, and for reasons explained below, the Court determines that a fifteen percent reduction of the hours billed in the administrative proceedings is appropriate, and for this federal action, the Court reduces the AFC attorneys' hours billed by the same fifteen percent, Ms. Cassidy's time billed by twenty-five percent, and Ms. Sebastian's time billed by forty percent.

### 1.    Underlying Administrative Proceedings

Defendants present several objections to the AFC attorneys' hours billed for their work on the underlying administrative proceeding. First, they argue that Plaintiff overbilled for time spent preparing for the hearings before the IHO. Opposition at 17-18. While Plaintiff billed a number of hours to prepare for the IHO hearings, these hours are largely reasonable. It is not the case, as Defendants claim, that the administrative proceedings were "an uncontested matter." Opposition at 17. As recounted above, the IHO conducted several hearings, including one for which Plaintiff submitted thirty-five exhibits and called to testify two witnesses who were subject to direct examination, cross-examination, and re-examination. Pl. 56.1 Stmt. ¶¶ 11-13. Mr. Hochbaum billed time for witness preparation, drafting questions, and preparing materials for the hearing. *See* Shore Decl., Exh. A at 4-5. None of this time is unreasonable considering the tasks undertaken and in light of DOE's unclear litigation stance at that time. Mr. Hochbaum's efforts are in line

with the steps the Court would expect from an attorney meeting their professional expectations of diligence.

The Court also does not agree with Defendants' criticism of AFC's billing records as "so vague and ambiguous" such that "it is often difficult to determine to what work a particular entry pertains." Opposition at 18. While there are a *de minimis* number of ambiguous entries, Plaintiff's billing records are largely clear and do not warrant the substantial cut of thirty percent that Defendants propose. *See id.* at 3. Defendants further contend that AFC billed for time too far in advance of the filing of the due process complaint. *Id.* at 18-19. The hours billed in this time period, though, all seem reasonably calculated to prepare for the presentation of a successful case, such as scheduling T.B. for medical evaluations and obtaining the necessary documentation to offer at the administrative proceedings. Particularly given the allegations that the denial of a FAPE in this case dated back to 2011, and the potential statute of limitations hurdles, the Court finds these steps were reasonable efforts to advance T.B.'s case. Notwithstanding these observations, the Court does conclude that the number of hours billed in this period is marginally inflated when the extent of preparation is compared to the benefits achieved at the administrative proceedings, which factors into the Court's overall calculation of the degree to trim AFC's hours.

Defendants next argue that the Plaintiff excessively billed for 0.1 hour entries. Opposition at 19-20. As courts in this District have repeatedly noted, "the practice of billing a tenth of an hour for a discrete task is not inherently problematic." *S.F.*, 2023 WL 4531187, at *12 (internal quotation marks and alteration omitted). With that in mind, these entries "may become excessive when an attorney on a single day bills multiple 0.10 hour entries for discrete tasks, where the tasks individually appear likely to have occupied less than 0.10 hours and in total appear likely to have occupied less than the sum total of the 0.10 hour increments." *L.J.*, 2024 WL 3842083, at *7

(internal quotation marks and alterations omitted).  After thoroughly reviewing the billing records, the Court concludes that that, with a few exceptions, these 0.1 hour entries are spread across different days and reflect different tasks (*i.e.*, emails to different recipients on different topics).  At the same time, AFC's bill does indicate a high volume of 0.1 hour entries and the Court is skeptical that some of these tasks (which primarily involve sending an email) consumed the full six minutes of the 0.1 hour increment.  *See H.A. v. New York City Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772, at *9 (S.D.N.Y. Feb. 25, 2022) (explaining that billing 0.1 hours "for mundane tasks such as sending a single email" or "attempting a call and leaving a voicemail" can be problematic as these tasks "could likely have been discharged in seconds").  This weighs in favor of a reduction.

Defendants further point to the high number of hours billed in advance of the May 22, 2019 hearing, which they contend was excessive because that hearing "last[ed] a little over one hour." Opposition at 20.  But the bulk of the time in question was spent preparing for the longer proceedings conducted on May 24, at which exhibits were presented and witnesses were examined. Indeed, between May 22 and May 24, AFC billed a minimal amount of hours towards the administrative proceedings, which mostly consisted of finalizing strategy and questions for witness examination.  While the Court views some of this preparation excessive, it does not find a large deduction of time warranted on this basis, particularly as this time likely aided in reducing the number of hours billed later in the case, where the billing records reflect a comparatively shorter amount of time expended.  Defendants also take umbrage with the amount of time for intra-office communication, *id.*, but the billing records reflect that "[m]ost communication between [Plaintiff]'s attorneys took place around hearing dates and was targeted to specific tasks at which latitude is properly given for strategic communication among counsel," and do not reflect that a

high number of lawyers inflated the bills by attending these meetings unnecessarily. *C.D. v. Minisink Valley Centr. Sch. Dist.*, No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *10 (S.D.N.Y. Aug. 9, 2018)

In sum, while the Court has some concerns with excessive billing for the administrative proceedings, the Court finds that the AFC lawyers largely billed appropriately. Most cases in this District which find multiple issues with excessive billing reduce a fee award between twenty-five percent and fifty percent. *See B.C. v. New York City Dep't of Educ.*, No. 21 Civ. 2840 (ER), 2022 WL 3214374, at *9 (S.D.N.Y. Aug. 9, 2022) (collecting cases). The DOE requests a thirty percent reduction given all of its objections to the hours billed. Opposition at 20. As the Court rejects several of those objections, a reduction of fifteen percent of the hours billed[7] adequately "trim[s] fat" for the time billed in the administrative proceedings and for the minimal number of hours that the AFC attorneys billed towards the federal action. *H.C.*, 71 F.4th at 126; *see also E.L.*, 2024 WL 3887154, at *2 (reducing hours by fifteen percent where "[s]ome of the hours worked were excessive"); *C.B. v. New York City Dep't of Educ.*, No. 18 Civ. 7337 (CM), 2019 WL 3162177, at *11 (S.D.N.Y. July 2, 2019) (same when the plaintiff's attorneys engaged in "somewhat excessive billing").

### 2.    Federal Action

In contrast to the hours billed by AFC in connection with the administrative proceedings, the Court finds many of the hours that LTL billed towards this federal action are excessive. The legal issues presented in this case are not complex, yet LTL billed 119.6 hours for the firm's work

---

[7] To afford Plaintiff the benefit of the doubt in this case, the Court has rounded up to the next tenth of an hour where a flat fifteen percent rate cut would result in a hundredth of an hour after an adjustment is made. For example, a fifteen percent reduction of Mr. Hochbaum's 129.1 hours billed results in 109.735 hours. Rather than round this to 109.7 hours (the closest tenth of an hour), the Court rounded the figure up to 109.8 hours.

on this case.  *See* Motion at 12; Cassidy Suppl. Decl. ¶ 3.  This is "significantly higher than what other courts have found reasonable for a standard IDEA attorney fees action."  *L.J.*, 2024 WL 3842083, at *8 (collecting cases which generally hold that around forty hours is reasonable to litigate a fee petition).  A review of LTL's billing records shows that excessive hours were expended on legal research and drafting, particularly by Ms. Sebastian, who billed eight hours on background IDEA research alone.  *See* Cassidy Decl., Exh. A at 6 (reflecting that Ms. Sebastian billed 3.8 hours on November 14, 2023, and 4.2 hours on November 15, 2023, for "[r]esearch[ing] free and appropriate public education under [the IDEA]").  While it is true that assignments to a junior attorney "may reasonably result in more hours billed," *L.J.*, 2024 WL 3842083, at *9, the steep number of hours incurred here on research and case history analysis warrant a significant reduction.  Factoring into this as well is the Court's agreement with Defendants that some portions of Plaintiff's summary judgment briefing mirrors briefs filed by AFC in other cases, namely *S.W.*, No. 22 Civ. 3592 (LGS) (S.D.N.Y.), and *D.B.*, No. 18 Civ. 7898 (AT) (KHP) (S.D.N.Y.).  While it may be unsurprising that such briefs would share some similarities, this demonstrates the rote nature of this fee application.  *See N.G.B. v. New York Dep't of Educ.*, No. 21 Civ. 11211 (LJL), 2023 WL 2711753, at *15 (S.D.N.Y. Mar. 30, 2023) (reducing federal litigation fees in part because portions of the briefing "are largely or entirely recycled from submissions in other cases").  It is not the case, though, that the briefing here is entirely copied and pasted from prior filings, and some aspects of LTL's briefing are properly tailored to Plaintiff's case.

Ms. Sebastian also billed several hours of time for tasks like collating records, checking citations, and proofreading, which a client would not reasonably expect to pay a lawyer's rate for. *See Hargroves v. City of New York*, Nos. 03 Civ. 1668 (RRM) (VMS), 03 Civ. 3869 (RRM) (VMS), 03 Civ. 5323 (RRM) (VMS), 03 Civ. 4646 (RRM) (VMS), 2014 WL 1270585, at *20

(E.D.N.Y. Jan. 6, 2014) (reducing an attorneys' fees award because "the Court finds it unreasonable to award Plaintiffs' counsel their full hourly rates for work that should more appropriately have been performed by a paralegal or an entry-level associate, such as printing cases, creating copies of .pdf files, photocopying and checking record cites"). The Court also agrees with Defendants that Ms. Cassidy billed an excessive number of hours (16.9) to draft the reply brief. *See* Cassidy Suppl. Decl., Exh. D at 3-4. In addition, early in the litigation and prior to the summary judgment stage, Ms. Cassidy spent 2.3 hours on May 31, 2023, reviewing case initiation documents, an inflated amount for this straightforward case, and further spent excessive time drafting Plaintiff's correspondence to the Court, billing 2.4 hours to draft approximately three pages of simple letters to the Court on June 21, 2023 and August 5, 2023. Cassidy Decl., Exh. A at 1, 4. While the Court of course concurs with Plaintiff's contention that an attorney has an obligation to ensure that claims presented to the Court have a factual basis and are supported by law, Reply at 8-9, the hours billed here go too far.

Defendants propose that the Court either cut LTL's fees entirely or reduce them by eighty percent. Opposition at 22. The Court does not find a basis to go that far. But considering the high volume of excessive hours billed towards the federal action, the Court will reduce Ms. Cassidy's hours by twenty-five percent and Ms. Sebastian's by forty percent. *See T.P.*, 2024 WL 986587, at *11 (collecting cases generally reducing work on a generic IDEA fees action "between 25 to 50 percent," with most around the twenty-five percent mark); *S.W.*, 2023 WL 5803415, at *9 (imposing a fifty percent reduction in order to "bring the hours sought on the federal litigation in line with what has proven reasonable in many other cases in this District"); *M.D. v. New York City Dep't of Educ.*, No. 21 Civ. 9180 (LGS), 2023 WL 2557408, at *6 (S.D.N.Y. Mar. 17, 2023) (adopting a forty percent reduction of hours billed in the federal action).

### 3.  Summary of Total Individual Billing

Based on the above conclusions, the Court calculates attorneys' fees as follows, *see* Shore Decl., Exh. A; Shore Suppl. Decl., Exh. O; Cassidy Decl., Exh. A; Cassidy Suppl. Decl., Exh. D:

**AFC[8]**

| Attorney | Rate | Hours | Adjusted Hours (15%) | Total |
|----------|------|-------|----------------------|-------|
| Shore | $420 | 26.9 | 22.9 | $9,618 |
| Hochbaum | $350 | 129.1 | 109.8 | $38,430 |
| Miller | $240 | 30.5 | 26 | $6,240 |
| Eisenstein | $150 | 7.1 | 6.1 | $915 |
| Kitchelt | $240 | 3.6 | 3.1 | $744 |

**AFC Total: $55,947**

**LTL**

| Attorney | Rate | Hours | Adjusted Hours (25% (Cassidy), 40% (Sebastian)) | Total |
|----------|------|-------|--------------------------------------------------|-------|
| Cassidy | $420 | 33.7 | 25.3 | $10,626 |
| Sebastian | $150 | 85.9 | 51.6 | $7,740 |

**LTL Total: $18,366**

**Total:[9] $74,313**

---

[8] There are very minor discrepancies between the hours presented in Plaintiff's Motion, Motion at 12, and the hours listed in the AFC billing record provided to the Court, Shore Decl., Exh. A.  The Court relies on the hours recorded on the billing records for all purposes.

[9] Although Plaintiff's briefing expresses that she seeks reimbursement for "fees and costs," *see, e.g.*, Motion at 1, Plaintiff has not identified any expenses or costs that she requests the Court to consider for reimbursement.  While expenses are noted on the billing document provided along with her Reply, *see* Cassidy Suppl. Decl., Exh. D, those expenses were not highlighted in yellow for the Court's consideration like the fee entries which LTL sought to be reimbursed, and the

C.      **Settlement Offer**

Defendants assert that they made a settlement offer of $54,900 for all work performed up through October 29, 2023, and thus the IDEA's fee cap applies if the Court determines that the attorneys are owed less than $54,900 in fees as of that date.  Opposition at 4; *see* Howland Decl. ¶ 22.  Plaintiff has not disputed that this settlement offer was made.  Under the IDEA's fee-shifting provisions, a court may not award attorneys' fees and related costs "subsequent to the time of a written offer of settlement to a parent if" the court "finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement."  20 U.S.C. § 1415(i)(3)(D)(i).  "Under those circumstances, a parent may only recover post-settlement offer fees if the parent 'was substantially justified in rejecting the settlement offer.'"  *M.R. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 5503 (VEC), 2022 WL 16575767, at *2 (S.D.N.Y. Oct. 31, 2022) (citing 20 U.S.C. § 1415(i)(3)(E)).  "The IDEA prohibits all awards for services rendered *after* a written offer of settlement is made to a parent if: (1) 'the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure [i.e., at least "14 days before the date set for trial"]'; (2) 'the offer is not accepted within 10 days'; and (3) 'the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.'"  *G.R. v. New York City Dep't of Educ.*, No. 23 Civ. 3948 (DEH), 2024 WL 3534406, at *7 (S.D.N.Y. July 25, 2024) (quoting 20 U.S.C. § 1415(i)(3)(D)(i)) (alteration in original).

Plaintiff contends that the IDEA's fee cap does not apply because "[t]he offer was not made before the administrative hearing began and the offer was not made pursuant to Rule 68."  Reply

---

accompanying declaration expresses only that "Plaintiff seeks reimbursement of . . . fees in connection with the underlying administrative and this federal action."  Cassidy Suppl. Decl. ¶ 4. Given the confusing nature of Plaintiff's submissions, the Court denies reimbursement of costs.

at 10.   While Plaintiff is correct that the offer was made during this litigation and not the administrative proceeding, Plaintiff is wrong to contend that the fee cap does not apply.   The cap applies when "the offer is made *within the time prescribed* by Rule 68 of the Federal Rules of Civil Procedure," and does not require the offer be formally designated as pursuant to Rule 68.   20 U.S.C. § 1415(i)(3)(D)(i)(I) (emphasis added).   Regarding the time prescribed under Rule 68, it is well accepted that "once the suit is filed, [a] defendant may make a Rule 68 offer, and it need not wait until plaintiff has completed any discovery," provided that "the offer must be made more than fourteen days before the trial begins."   Wright & Miller, 12 Federal Practice and Procedure § 3003 (3d ed.) (June 2024).   Defendants' offer here was made within the time prescribed by Rule 68, as it preceded the summary judgment stage and thus was made more than fourteen days before any trial would have begun.   The Court, in fact, stayed the parties' summary judgment briefing schedule to allow for these settlement negotiations.   *See* Dkt. 29.   And indeed, Defendants' offer of settlement repeatedly expresses that it was being made "[p]ursuant to 20 U.S.C. § 1415(i)(3)(D)," which could only have been a refence to a Rule 68 offer as the administrative proceedings had long since ended.   *See* Howland Decl., Exh. A.   Moreover, courts routinely apply the IDEA's fee cap to such written offers of settlement made in the course of federal litigation. *See G.R.*, 2024 WL 3534406, at *7; *J.G.*, 2024 WL 728626, at *13-14; *K.E. v. New York City Dep't of Educ.*, No. 21 Civ. 2815 (KPF), 2022 WL 4448655, at *17 (S.D.N.Y. Sept. 23, 2022).

Whether the fee cap applies depends on the value of the fees Plaintiff's attorneys had accumulated through October 29, 2023.   By this point, the AFC attorneys had billed the bulk of their hours, so the Court's general hourly trim rate of fifteen percent applies.   The only AFC attorneys who billed time after this point were Ms. Kitchelt (2.4 hours) and Ms. Shore (9.7 hours). *See* Shore Decl., Exh. A; Shore Suppl. Decl., Exh. O.   Ms. Cassidy had billed 8.3 hours of time

before the offer, including some excessive time identified above, but Ms. Sebastian had not yet begun billing time on the case.  *See* Cassidy Decl., Exh. A.  Using the Court's rate and hour calculations as set forth above, Plaintiff's attorneys had billed $54,669 by the time of the offer:

### Pre-Offer AFC

| Attorney | Rate | Hours | Adjusted Hours (15%) | Total |
|---|---|---|---|---|
| Shore | $420 | 17.2 | 14.7 | $6,174 |
| Hochbaum | $350 | 129.1 | 109.8 | $38,430 |
| Miller | $240 | 30.5 | 26 | $6,240 |
| Eisenstein | $150 | 7.1 | 6.1 | $915 |
| Kitchelt | $240 | 1.2 | 1.1 | $264 |

**Pre-Offer AFC Total: $52,023**

### Pre-Offer LTL

| Attorney | Rate | Hours | Adjusted Hours (25%) | Total |
|---|---|---|---|---|
| Cassidy | $420 | 8.3 | 6.3 | $2,646 |

**Pre-Offer LTL Total: $2,646**

**Pre-Offer Total: $54,669**

Because this amount is less than the $54,900 offer, the fee cap applies and Plaintiff's attorneys cannot recover for the additional fees incurred after this point.  Plaintiff is thus limited to $54,669 in attorneys' fees.

### D.    Pre-Judgment and Post-Judgment Interest

Although "whether or not to award prejudgment interest is ordinarily left to the discretion of the district court," a district court may decline to award pre-judgment interest when it applies

"current rather than historic hourly rates." *H.C.*, 71 F.4th at 128.  As the Court has applied current hourly rates, the Court declines to award pre-judgment interest.  But the Court will award post-judgment interest, which is mandatory under 28 U.S.C. § 1961.  *Id.* at 129.

## IV.  Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment in part.  Plaintiff is awarded $54,669 in attorneys' fees, as well as post-judgment interest pursuant to 28 U.S.C. § 1961.  As discussed at *supra* n.2, the Court grants in part and denies in part Plaintiff's pending sealing motions.  Dkts. 43, 59.  Plaintiff shall propose redactions as set forth above.  The Clerk of Court is respectfully directed to strike Paragraphs 4 through 21 of the declaration submitted at Docket Number 50, the entirety of the declaration submitted at Docket Number 51, and Paragraphs 17, 18, and 20 of the declaration submitted at Docket Number 52.  The Clerk of Court is further directed to close the motions pending at Docket Numbers 35, 43, and 59.

SO ORDERED.

Dated: September 30, 2024
    New York, New York

                                   JOHN P. CRONAN
                           United States District Judge